# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**IN RE: SUBWAY FOOTLONG
SANDWICH MARKETING AND                    MDL No. 13-02439
SALES PRACTICES LITIGATION**

| This Document Relates to All Cases |
| --- |

---

## DECISION AND ORDER

The present litigation consists of multiple class actions that the Judicial Panel on Multidistrict Litigation transferred to this district for consolidated pretrial purposes. See 28 U.S.C. § 1407. The plaintiffs allege that Doctor's Associates, Inc., the franchisor of Subway restaurants, engaged in deceptive marketing and sales practices by advertising Subway sandwiches as "Footlongs" and "6-inch" sandwiches when, in fact, some sandwiches were slightly shorter than their advertised lengths. The parties have reached a settlement. In a prior order, I certified a settlement class and preliminarily approved the settlement agreement. On January 15, 2016, I held a final fairness hearing. Before me now are motions relating to the final approval of the settlement: plaintiffs' motion for final approval of the settlement; class counsel's motion for attorneys' fees, costs, and incentive awards for the named plaintiffs; and several administrative motions.

## I. BACKGROUND

Doctor's Associates is the franchisor of Subway restaurants in the United States. The restaurants, which sell fast-food submarine sandwiches, are owned by independent franchisees. Doctor's Associates enforces certain uniform standards that apply to the

Case 2:13-cv-00653-LA   Filed 02/25/16   Page 1 of 29   Document 84

restaurants and also conducts a nationwide marketing campaign. During the time period relevant to this suit, the marketing campaign advertised Subway sandwiches as "Footlongs" and included various references to the sandwiches being one foot, or 12 inches, in length. See Am. Compl. ¶¶ 28–31, ECF No. 18. The defendant also marketed "6-inch" sandwiches as being available for purchase at Subway restaurants. These sandwiches are created by cutting the bread used for Footlong sandwiches in half. Id. ¶ 32.

In January 2013, an Australian teenager posted a picture on Facebook of a Subway Footlong sandwich he purchased that was only 11 inches long. The picture became the subject of considerable media attention. Around this time, the lawyers who would eventually file the present case began investigating potential claims against Doctor's Associates for violating state consumer-protection laws. Between January and June of 2013, the named plaintiffs and their respective counsel filed complaints in several courts around the country. The complaints alleged that Doctor's Associates had engaged in unfair and deceptive marketing practices regarding the length of Footlong and 6-inch sandwiches, resulting in each plaintiff receiving less food than he or she had bargained for. Each case was pleaded as a class action and sought monetary damages, attorneys' fees, and injunctive relief under the consumer-protection laws of all 50 states and the District of Columbia.

In February 2013, Doctor's Associates requested that the Judicial Panel on Multidistrict Litigation transfer the seven actions that had been filed by that time to a single district for consolidated pretrial proceedings. While waiting for the panel to rule on the request, the parties in all cases agreed to mediate with a retired United States Magistrate

2

Judge. In preparation for the mediation, the parties exchanged informal discovery relating to the merits of the plaintiffs' claims. During this time, plaintiffs' counsel continued with their own investigation, which included interviewing former employees of the bakeries that manufactured the dough used in Subway sandwiches. The parties then participated in a mediation session that did not result in a resolution of the case.

By the time the initial mediation session was over, the plaintiffs realized that their claims were quite weak. First, the plaintiffs learned that Doctor's Associates' own testing showed that the vast majority of bread sold in Subway restaurants was at least 12 inches long, and that most of the bread that happened to be shorter than 12 inches was less than 1/4-inch shorter. Second, the plaintiffs learned that all of the raw dough sticks used to bake Subway bread weigh exactly the same. The dough sticks arrive at the restaurants frozen, and are then thawed, stretched, allowed to rise, and baked. Due to natural variability in this process, the final loaves may have slightly different shapes. Some loaves will be slightly shorter and wider than others. But because all loaves are baked from the same quantity of dough, each loaf contains the same quantity of ingredients. Thus, a customer who received a baked loaf that was shorter than 12 inches did not receive any less bread than he or she would have if the loaf had measured exactly 12 inches. Third, the plaintiffs learned that the amount of meat and cheese included with each sandwich is standardized. Thus, a sandwich that is slightly shorter than 12 inches contains the same amount of meat and cheese as it would have had it measured exactly 12 inches. It is theoretically possible that a sandwich made on a slightly shorter loaf would contain a slightly diminished quantity of toppings—a sandwich that was 1/4-inch shorter than advertised might be missing a few shreds of lettuce or a gram or two of mayonnaise.

3

However, Subway sandwiches are made to order in front of the customer, and if the customer asks for more of any particular topping, the employee making the sandwich will add more of that topping to the sandwich. Thus, the plaintiffs learned that, as a practical matter, the length of the bread does not affect the quantity of food the customer receives. See generally Decl. of Nicholas Hauptfeld, ECF No. 55-1.

Also during this informal discovery period and initial mediation session, the plaintiffs began to evaluate their chances for obtaining class certification on their damages claims. They realized that one serious obstacle to class certification was the lack of proof as to which potential class members purchased sandwiches that were shorter than advertised. Because not every Subway sandwich sold during the class period was undersized, it is not the case that every person who purchased a Subway sandwich during the class period suffered an injury. Thus, individualized hearings would be needed to determine which potential class members purchased undersized sandwiches. Moreover, unless a customer happened to measure his or her sandwich before eating it (as the named plaintiffs did, see Am. Compl. ¶¶ 11–19), the customer was unlikely to even realize that the sandwich was shorter than advertised. This made proof of injury difficult. Another obstacle to class certification related to proof of materiality, which is an element of a claim for damages under most states' consumer-protection statutes. Many consumers likely would not be so concerned about the exact dimensions of a fast-food sandwich that they would feel cheated upon learning that the sandwich they purchased was 1/4-inch shorter than advertised. This is especially true when the length of the sandwich does not affect the quantity of food received. Thus, individualized inquiries would be needed in order to identify those few consumers who both received undersized sandwiches and deemed the

4

slight difference in length material to their purchasing decisions.

In light of these problems with obtaining class certification on claims for monetary damages, the plaintiffs decided to refocus their efforts on the class's claims for injunctive relief, which sought an injunction requiring Doctor's Associates to adopt measures designed to ensure that all sandwiches are at least 12 inches long. By the time the plaintiffs made this decision, the Panel on Multidistrict Litigation had granted Doctor's Associates' motion and transferred the original seven cases to this court.[1] I then appointed lead counsel and set a deadline for the plaintiffs to file an amended complaint governing all cases. The complaint that was eventually filed did not contain claims for monetary damages. Instead, the plaintiffs sought injunctive relief only and alleged that class certification was proper under Federal Rule of Civil Procedure 23(b)(2). The proposed class was defined as all persons in the United States who purchased a Subway 6-inch or Footlong sandwich during the class period.

Throughout the summer and fall of 2013, the parties continued to attend mediation sessions with the magistrate judge. By March 2014, the mediation had resulted in a settlement in principle on the claims for injunctive relief. Under the settlement, Doctor's Associates agreed to institute or keep in place, for a period of at least four years from the date the court finally approves the settlement, a number of practices that are designed to ensure that all bread sold at Subway restaurants is at least 12 inches long. See Settlement

---

[1]The Panel would later transfer an eighth case to this court. Moreover, a ninth case that had been originally filed in this district was also made part of the proceeding.

Agreement ¶¶ 22.i–22.vi, 24, ECF No. 46-1 at pp. 30–33.[2]  In addition, Doctor's Associates agreed to require all Subway restaurants to post notices to customers indicating that, due to natural variability in the bread-baking process, the size and shape of bread may vary. Id. ¶ 22.vii.  Doctor's Associates agreed to post a similar notice on its own website.  Id. ¶ 22.viii.

Under the consumer-protection laws of most states, a successful plaintiff is entitled to an award of reasonable attorneys' fees.  The parties' initial settlement agreement did not result in a settlement of class counsel's claim for attorneys' fees under these statutes. Moreover, in class-action settlements, the named plaintiffs are often awarded compensation (known as "incentive awards") for their services as class representatives. See, e.g., Eubank v. Pella Corp., 753 F.3d 718, 723 (7th Cir. 2014).  The initial settlement did not address the named plaintiffs' claims for incentive awards.  But the parties engaged in further mediation with the magistrate judge in an attempt to settle the amount of attorneys' fees and incentive awards.  After several months of failed attempts at settling these matters, the parties informed the court that they had reached an impasse.

In December 2014, I offered to personally conduct mediation relating to the amount of attorneys' fees and incentive awards, provided that all parties consented to my doing so.

---

[2]The practices include: requiring individual restaurants to use a tool for measuring the baked bread; requiring Doctor's Associates to sample and measure the baked bread at each restaurant during its compliance inspections; requiring Doctor's Associates to inspect bread ovens and proofers during its compliance inspections; increasing compliance penalties for restaurants found using bread that is not at least 12 inches long; and changing all Subway protocols, training manuals, franchisee communications, and operations manuals, which previously stated that the minimum acceptable size of a Footlong was 11.5 inches, so that all documents now state that the Footlong must be 12 inches long.

6

I informed the parties that, in the alternative, the plaintiffs could file a contested motion for attorneys' fees and incentive awards, to which Doctor's Associates would respond, and which I would ultimately resolve. The parties agreed to mediation with the court. The mediation was held in February 2015 and resulted in a resolution of the outstanding issues. Under the parties' agreement, the plaintiffs agreed to ask the court to award no more than $525,000 in attorneys' fees (including costs and expenses) and incentive awards, and Doctor's Associates agreed that it would not oppose the plaintiffs' request. See Settlement Agreement ¶¶ 39–41. The agreement provides that the incentive awards shall be no more than $1,000 per named plaintiff.[3] The agreement further provides that the exact amount of attorneys' fees and incentive awards would be left to the sole discretion of the court, and that the court's deciding to award less than $525,000 would not result in termination of the agreement to settle the claims for injunctive relief.

In September 2015, the parties submitted the final proposed settlement agreement to the court for preliminary approval. In this agreement, the proposed settlement class is defined all persons in the United States who purchased a 6-inch or Footlong sandwich at a Subway restaurant between January 1, 2003 and the date of preliminary approval (which was October 2, 2015). Importantly, the final settlement agreement provides that class members who are not named plaintiffs are releasing only claims for injunctive relief; the settlement agreement expressly reserves the right of class members to bring claims for monetary damages against Doctor's Associates, either individually or in a subsequent class

---

[3]There are ten named plaintiffs, so the maximum total incentive award would be $10,000. However, as discussed below, the named plaintiffs ended up requesting incentive awards of only $500 each, for a total of $5,000.

action.  See Settlement Agreement ¶¶ 47–48.

The final settlement agreement contemplates that the class will be certified for settlement purposes under Federal Rule of Civil Procedure 23(b)(2), i.e., as an "injunction only" class.  Rule 23 does not allow members of a class certified under this provision to opt out.  Nor does Rule 23 clearly require the court to direct notice to the members of an injunction-only class.  See Fed. R. Civ. P. 23(c)(2); but see Rule 23(e)(1) (requiring court to direct notice of a settlement to class members).  However, the settlement agreement provides for notice to class members.  Specifically, the agreement provides that a settlement administrator will distribute a national press release announcing the settlement to thousands of newspapers, television stations, radio stations, magazines, and websites.  Settlement Agreement ¶¶ 33–34.  The press release will direct class members to a website containing information about the case, the settlement, and the procedures for class members to object to the settlement and/or the plaintiffs' requests for attorneys' fees and incentive awards.  Id.

On October 2, 2015, I preliminarily approved the parties' settlement.  Following the settlement administrator's distributing the press release, many news agencies ran stories on the settlement.  See Decl. of Jason Rabe ¶ 3, ECF No. 54-3.  On December 7, 2015, class counsel filed their motion for attorneys' fees, in which they seek an award of $520,000.  The named plaintiffs seek incentive awards of $500 each, for a total of $5,000.

The court has received four objections from class members.  Three of these objections are by unrepresented class members who object to the lack of monetary relief for the class.  See ECF Nos. 48, 49, 53.  The fourth objection was filed by an attorney on behalf of Theodore H. Frank, who is the director of an organization called the Center for

8

Class Action Fairness. Like the unrepresented objectors, Frank objects to the lack of monetary relief for the class, but he also raises other legal issues that I consider below.

## II. DISCUSSION

A settlement-only class must satisfy the bulk of Rule 23's requirements in order to be certified. Amchem Prods., Inc. v.Windsor, 521 U.S. 591, 620 (1997); Jamie S. v. Milwaukee Public Schools, 668 F.3d 481, 502 (7th Cir. 2012). This includes the four "prerequisites" to class certification listed in Rule 23(a), i.e., numerosity, commonality, typicality, and adequacy of representation. Moreover, where, as here, the parties seek certification of an "injunction only" settlement class, they must show that Rule 23(b)(2) has been satisfied, i.e., that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); Jamie S., 668 F.3d at 503.

In the present case, the objectors do not dispute that the first three prerequisites to class certification are satisfied. And I conclude that they are satisfied. First, the class is so numerous that joinder of all members is impractical, see Fed. R. Civ. P. 23(a)(1), as a sizable portion of the American population purchased sandwiches at Subway restaurants during the class period. Second, there is a question of law or fact common to the class, see Fed. R. Civ. P. 23(a)(2), namely, whether the defendant's having marketed Subway sandwiches as "Footlongs" or "6-inch" sandwiches was deceptive given that some sandwiches were slightly shorter than those lengths. Third, the claims of the named plaintiffs are typical of the claims of the class, see Fed. R. Civ. P. 23(a)(3), in that there are no discernible differences between the named plaintiffs' claims and the claims of the class

members.

Objector Frank contends that the fourth prerequisite to class certification, adequacy of representation, is not satisfied. See Fed. R. Civ. P. 23(a)(4).[4] Frank contends that both the named plaintiffs and class counsel have agreed to a settlement that is not fair to the class, and that therefore they have not fairly and adequately protected the interests of the class. Frank also contends that the class may not be certified as an injunction-only class under Rule 23(b)(2) because injunctive relief is not appropriate respecting the class as a whole. Frank's position is that this case is really about monetary relief, and that therefore the class must be certified under Rule 23(b)(3), which is the provision under which claims for monetary damages are usually certified. Frank's objections to certification under Rule 26(a)(4) and (b)(2) touch upon the fairness of the settlement itself. Thus, I will incorporate my discussion of these objections into my general discussion of the fairness of the settlement, to which I now turn.

Under Federal Rule of Civil Procedure 23(e)(2), a court may approve a settlement in class action litigation only if it finds that the settlement is "fair, reasonable, and adequate." In order to evaluate the fairness of a settlement, the court must consider "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014)

---

[4]Relatedly, Frank contends that class counsel have not fairly and adequately represented the interests of the class, as required by Rule 23(g)(4).

(internal quotation marks omitted).  The first factor—the strength of the plaintiffs' case compared to the value of the settlement—is the most important.  Id. at 863–64.

In recent years, the Seventh Circuit has emphasized that, given the realities of class-action litigation—especially consumer class-action litigation—courts must carefully scrutinize class settlements for fairness.  As the court has explained,

> class action settlements are often quite different from settlements of other types of cases, which indeed are bargained exchanges between the opposing litigants. Class counsel rarely have clients to whom they are responsive. The named plaintiffs in a class action, though supposed to be the representatives of the class, are typically chosen by class counsel; the other class members are not parties and have no control over class counsel. The result is an acute conflict of interest between class counsel, whose pecuniary interest is in their fees, and class members, whose pecuniary interest is in the award to the class. Defendants are interested only in the total costs of the settlement to them, and not in the division of the costs between attorneys' fees and payment to class members. We thus have remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests.

Pearson v. NBTY, Inc., 772 F.3d 778, 787 (7th Cir. 2014) (internal quotation marks omitted).  For these reasons, courts must "exercise the highest degree of vigilance" in their review of class-action settlements.  Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 279–80 (7th Cir. 2002).

I begin my analysis of the settlement's fairness by comparing the strength of the plaintiffs' case to the value of the settlement, which, as noted, is the most important factor.  On this point, the parties and Frank are in agreement: given the strength of the plaintiffs' case, the total value of the settlement, i.e., $525,000 plus the value of the injunction to the

class,[5] is reasonable.  See Frank Obj. at 1 ("Frank does not object to Subway settling this case for half a million dollars . . . .").  I too agree that the plaintiffs would be unlikely to recover more than $525,000 from Doctor's Associates, even if they attempted to reinstate their claims for monetary damages.  Primarily, this is because class counsel has found no evidence to suggest that serving slightly undersized bread resulted in customers receiving less food.  As explained in the background section, the frozen dough sticks weigh the same, and the precise length of the finished loaves does not affect the amount of meat, cheese, and other ingredients included with a sandwich.  Thus, the evidence indicates that all purchasers of Footlongs and 6-inch sandwiches received the full amount of food associated with their advertised lengths, regardless of the precise length of the bread.  Given this, the only class members who could have suffered an injury are those who deemed the precise length of the sandwich important for reasons unrelated to the amount of food associated with that length.  But no evidence suggests that consumers ascribe any value to the precise length of a fast-food sandwich.  Further, even if a slightly shorter sandwich contained a diminished quantity of ingredients, the evidence indicates that most undersized sandwiches were only 1/4-inch shorter than the advertised length.  See Hauptfeld Decl. ¶ 4.  It is highly unlikely that this difference in length would be material to a consumer's purchasing decision, as a difference that small is unlikely to affect the consumer's enjoyment of the sandwich, satiety, or nutrition.  Thus, there is no evidence to

---

[5]The plaintiffs have submitted a declaration from an economist, John Gordon, who opines that the value of the injunction to class members is more than $5 million.  See Decl. of John Gordon ¶ 11, ECF No. 56-4.  However, I do not believe that it is possible to assign a precise monetary value to the injunction.  Nor is it necessary to do so.  For these reasons, I have not relied on Gordon's opinion in evaluating either the reasonableness of the settlement or the reasonableness of class counsel's fee request.

suggest that any consumer would have paid less for a sandwich had he or she known of the possibility of the bread's being up to 1/4-inch shorter than the advertised length. In light of these problems with the plaintiffs' claims—not to mention the problems the plaintiffs would have had in obtaining certification of a damages class under Rule 23(b)(3)—a total monetary settlement of $525,000 is reasonable. It is even more reasonable given that class members have not released their claims for monetary damages and are free to bring their own claims, either individually or through a proposed class action, if they believe that the difference in bread size caused them compensable harm.[6]

Although Frank agrees that the total settlement amount is reasonable, he objects to the settlement's allocation of the entire monetary component to the named plaintiffs and class counsel, with no money being distributed to absent class members. Frank contends that the $525,000 that Doctor's Associates is willing to pay to the named plaintiffs and their counsel should be administered as a common fund for the benefit of the class as a whole, as it would be in a Rule 23(b)(3) settlement. Class counsel would then be entitled to claim a reasonable percentage of the common fund, such as one-third, as attorneys' fees, and the named plaintiffs could claim reasonable incentive awards.

One major problem with certifying the settlement class under Rule 23(b)(3), which Frank has not meaningfully addressed, is the impracticality of distributing a settlement as small as $525,000 to a class composed of many millions of consumers. The cost of

_____

[6]I emphasize that the settlement agreement does not prohibit individual class members from bringing a subsequent class action, which distinguishes the present settlement from the settlement in Crawford v. Equifax Payment Services, 201 F.3d 877, 880 (7th Cir. 2000), in which the court deemed a class settlement improper, in part, because it purported to preserve the class members' individual damages claims but barred class members from bringing a subsequent class action for damages.

informing class members of the settlement and how to either submit claims or opt out, processing the submitted claims and opt-outs, and distributing payments to class members would likely exceed the entire value of the settlement. For example, between 2008 and 2010, I presided over a consumer class action involving a Rule 23(b)(3) settlement class composed of nearly every person in the United States who purchased a lawnmower during a 20-year period. See In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litigation, No. 08-MD-1999 (E.D. Wis.). In that case, slightly more than $22 million in cash was distributed to the approximately one million class members who submitted valid claims. The total cost of administering that settlement was more than $2.7 million. See Decl. of Rebecca Blake ¶¶ 3–9, ECF No. 525 in E.D. Wis. Case No. 08-MD-1999. The cost of mailing checks to class members was itself more than $400,000. Id. ¶ 5. Even if a cash settlement in the present case could be administered for less than $2.7 million, almost certainly the administrative costs would still exceed $525,000, making distribution of the settlement proceeds to the class members impossible.

At the fairness hearing, Frank's counsel suggested that the cost of administering a Rule 23(b)(3) settlement in this case might be as little as $100,000. Based on my experience with class settlements, I find this estimate extremely unrealistic. But even assuming that $100,000 is an accurate estimate of the cost of administering a $525,000 common fund for the benefit of a class of millions, the class members would still receive nothing of value. That is because the amount distributed to any single class member would be less than the value of the time the class member would spend leaning about the settlement, submitting a claim, and cashing the settlement check. Here are some back-of-the-envelope calculations that illustrate this problem: Assuming that $100,000 of the

14

settlement would go to administrative costs, $425,000 would be available for class members and class counsel. Assume further that class counsel is entitled to a fee equal to one-third of this amount. See Pearson, 772 F.3d at 782 (suggesting that, in consumer class actions, attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel). That would be a fee of $141,667, which leaves $283,333 for class members.[7] Assume that the 10 named plaintiffs each receive $100 incentive awards, which reduces the amount available for distribution to the class to $282,333. If we then assume that one million class members will file valid claims, each class member would ultimately receive a check for 28 cents. Next, assume (optimistically) that it takes only five minutes for a class member to do what it takes to submit a valid claim and to cash the settlement check. Also assume (pessimistically) that an hour of a class member's time is worth only $7.25, which is the current federal minimum wage. Under these assumptions, five minutes of the class member's time would be worth about 60 cents, which is more than double the 28 cents he or she would receive under the settlement. Thus, if the settlement could be administered under Rule 23(b)(3) for only $100,000, it would, at best, cost class members 32 cents each. Of course, if all class members took the value of their time into consideration, no one would bother to submit a claim for 28 cents. Thus, administering this settlement under Rule 23(b)(3) would result in class members receiving nothing of value.

Also at the fairness hearing, Frank's counsel suggested that the settlement fund

---

[7]Note that in this hypothetical, class counsel does not receive any additional amount from the common fund to cover expenses. In the present case, class counsel has incurred nearly $40,000 in expenses.

15

could be administered as a coupon settlement, which might make administration less costly. When I asked Frank's counsel to explain how distributing coupons rather than cash would improve matters, he stated that coupons could be distributed at the point of sale: a class member could walk into a Subway restaurant, identify herself as a class member, and then fill out a form and receive a coupon for 30 cents (or some similar amount) off of her order. This approach would eliminate the cost of mailing checks to class members and reduce the hassle to the class members associated with submitting claims and receiving settlement proceeds. However, counsel for Doctor's Associates stated at the fairness hearing that the parties considered entering into a coupon settlement but abandoned that idea because it would be too costly to administer. Counsel stated that the estimated cost of providing notice to class members of a coupon settlement and allowing them to opt out of the settlement would exceed $1 million dollars, which obviously is more than the reasonable settlement value of this case. Moreover, because Subway restaurants are owned by independent franchisees rather than Doctor's Associates, the franchisees (who are not defendants), rather than Doctor's Associates, would bear most of the cost of the coupon settlement. Settling matters between Doctor's Associates and its franchisees would lead to further administrative costs. For these reasons, a coupon settlement, like a cash settlement, is impractical.

Frank further contends that the settlement is unreasonable, and that the named plaintiffs and class counsel have proved to be inadequate representatives of the absent class members, because the agreed-to injunctive relief will not benefit the class members. Frank contends that this is so for two reasons: (1) the injunction does not require Doctor's Associates to do anything that it had not already agreed to do before this suit was filed,

16

and (2) the class members' alleged injuries were incurred in the past, yet the prospective injunctive relief does nothing to redress those injuries.

In support of his first reason, Frank points out that on January 25, 2013—almost immediately after the Footlong controversy gained media attention—Doctor's Associates pledged to ensure that all Subway Footlong sandwiches would be 12 inches long. Thus, argues Frank, the injunction in this case does not provide class members with any benefit that they do not already enjoy. However, Doctor's Associates has submitted a declaration in which it states that it agreed to the specific practice changes listed in the injunction "substantially as a result of [this] litigation." Decl. of David Cousins ¶ 3, ECF No. 54-1. Moreover, the value of the injunction lies not only in the practice changes, but in the availability of an enforcement mechanism. That is, assuming that Doctor's Associates made the practice changes in response to the media attention and was not judicially bound to keep the changes in place, it could have abandoned the changes after the media attention subsided. But the injunction requires Doctor's Associates to keep the changes in place for four years from the date that this litigation concludes, and class members may enforce violations by filing motions for contempt sanctions. Thus, it is not accurate to say, as Frank does, that the settlement does nothing to change the status quo.

Frank cites In re Aqua Dots Products Liability Litigation for the proposition that a named plaintiff is not an adequate class representative if he proposes to incur notice and litigation costs to obtain a remedy that the defendant has already made available to class members. 654 F.3d 748, 752 (7th Cir. 2011). In Aqua Dots, the named plaintiffs sought refunds on behalf of all purchasers of a consumer product that the distributor had agreed to voluntarily recall. Under the voluntary recall, full refunds were already available to all

17

purchasers. However, to obtain refunds through a class action, the class would have to bear the cost of providing notice to the class members and pay attorneys' fees. This meant that no consumer would obtain a full refund through the class action—at least part of each consumer's refund would be used to pay for notice and attorneys' fees. Thus, the named plaintiffs were proposing to make each class member worse off: under the voluntary recall, the consumer would obtain a full refund; under the class action, the consumer's refund would be reduced to pay for notice and attorneys' fees. This is why the court deemed the named plaintiffs inadequate representatives of the class and refused to certify their claims under Rule 23. Id. at 750–52.

In contrast to the proposed class action in Aqua Dots, the settlement in the present case does not make any class member worse off. The defendant, rather than the class, has paid for the injunction, notice, and attorneys' fees. It is true that the class members will indirectly pay for these items by releasing their claims for injunctive relief. But that is a reasonable exchange: the plaintiffs are giving up no more than the value of the injunctive relief they will receive. Thus, even if it were the case that the injunctive relief does no more than formalize the practice changes that Doctor's Associates already agreed to make, it would not follow that the named plaintiffs or class counsel have failed to adequately represent the class, or that the settlement is unfair.

Frank's second reason for claiming that the injunctive relief does not benefit class members is that it benefits only future purchasers of Subway sandwiches, yet the class is defined as customers who purchased Subway sandwiches in the past. It is true that not every person who purchased a sandwich in the past will purchase one in the future, and that therefore not every class member will benefit from the injunction. However, because

18

many patrons of Subway restaurants are repeat customers, it is also true that very many class members will purchase a Subway sandwich in the future. And those class members who would not benefit from the injunction because they do not intend to purchase sandwiches in the future (or simply do not care about the precise length of the sandwiches they purchase) necessarily are not giving anything up by releasing their claims for injunctive relief. Further, as I have discussed, it is not possible, given the value of the plaintiffs' claims, to distribute any form of compensatory relief to the class members. Thus, the remedy is either injunctive relief or nothing. When the injunction is viewed in this light, it cannot be deemed inadequate on the ground that it does not benefit every class member.

Frank next points out that the proposed settlement contains "clear sailing" and "kicker" clauses, which are features that courts have identified as warning signs of an unfair settlement. Under a clear-sailing clause, a defendant agrees not to oppose class counsel's fee petition. See Redman v. RadioShack Corp., 768 F.3d 622, 637 (7th Cir. 2014). Such a clause is considered a sign of collusion: Because it is in the defendant's interest to contest class counsel's fee request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider. Id. Under a kicker clause, if the court reduces the amount of class counsel's fee, the difference reverts to the defendant and is not distributed to class members. See Pearson, 772 F.3d at 786. This has been described as a gimmick for defeating objectors: "If the class cannot benefit from the reduction in the award of attorneys' fees, then the objector, as a member of the class, would not have

standing to object, for he would have no stake in the outcome of the dispute." Id.

In the present case, however, the clear-sailing and kicker clauses are not signs of an unfair settlement. First, the kicker clause is just a byproduct of the fact that it is impractical to distribute any part of the $525,000 requested by class counsel to the class members. For example, if I concluded that a reasonable fee for class counsel is only $300,000, it would be impossible to distribute the remaining $225,000 to the class, as administrative costs alone would exceed that amount. Second, the clear-sailing clause is what class counsel bargained for when it agreed to settle the fee component of this case rather than ask the court to award a reasonable fee. That is, but for the settlement of the fee component, class counsel could have filed a fee petition requesting more than $525,000, and the defendant could have opposed that petition. But in exchange for class counsel's agreement to cap its fee request at $525,000, defendant agreed not to oppose the request. More importantly, the parties' agreement to settle the fee component cannot be viewed as an attempt to minimize the defendant's overall liability and enrich class counsel at the expense of the class members. As discussed, the reasonable settlement value of this case is only $525,000, and it is simply impractical to distribute any part of that amount to the class members. See In re Southwest Airlines Voucher Litig., 799 F.3d 701, 712–13 (7th Cir. 2015) (noting that clear-sailing and kicker clauses are not per se unreasonable and concluding that district court did not abuse its discretion in approving a settlement agreement that contained such clauses).

Next, Frank contends that the settlement is unfair, and that the named plaintiffs have proved to be inadequate class representatives, because the named plaintiffs will receive $500 each while the absent class members will receive no monetary relief. Frank

20

cites several cases in which the Seventh Circuit has noted that a named plaintiff's receiving an incentive award that is disproportionate to the relief afforded to absent class members is a sign of an unfair settlement. See Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 875–76 (7th Cir. 2012); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 952 (7th Cir. 2006); Crawford v. Equifax Payment Servs., 201 F.3d 877, 882 (7th Cir. 2000). However, these cases are distinguishable. First, in Espenscheid, the court stated that "[o]ne can imagine . . . a case in which the representative presses for an incentive award so large in relation to the judgment or settlement that if awarded it would significantly diminish the amount of damages received by the class." 688 F.3d at 875–76. But in the present case, awarding $5,000 to the named plaintiffs would not significantly diminish the amount of damages received by the class since, as discussed, it is not practical to distribute damages to the class in the first place. Second, in both Murray and Crawford, the court thought that awarding a large incentive award to a single named plaintiff while the rest of the class received no meaningful relief implied that the class's claims were worth more than what the plaintiff in each case had settled for, and that the named plaintiff had sold out the class. Murray, 434 F.3d at 952; Crawford, 201 F.3d at 882. But as discussed, the named plaintiffs in the present case have extracted from Doctor's Associates all that they reasonably could have given the weakness of their claims, and distributing $525,000 in cash to the class is impractical. Thus, unlike in Crawford and Murray, the fact that the named plaintiffs will receive $500 each for their efforts while the absent class members will receive only injunctive relief does not imply that the named plaintiffs sold out the class. To the contrary, $500 per named plaintiff is reasonable compensation for the risks that they took (such as the risk that, should the suit fail, they would be personally liable for the

21

defendant's costs and attorneys' fees) and the services they performed.  See Espenscheid, 688 F.3d at 876–77 (identifying risks taken and services performed by class action plaintiffs and noting that median service award of $4,000 per class member represents "modest" compensation).

The next question is whether the settlement class may be certified under Rule 23(b)(2) as an "injunction only" class.  As noted, Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole."  Here, the plaintiffs' complaint alleges that the defendant's marketing and sales practices are deceptive because Doctor's Associates markets its products as Footlongs and 6-inch sandwiches, even though some sandwiches are slightly shorter than those lengths.  This conduct applies generally to the class, in that the marketing and sales practices are not tailored to individual customers.  Moreover, Doctor's Associates cannot modify its marketing and sales practices on a per-customer basis.  Rather, any changes to those practices will apply to all franchisees and to all customers.  Thus, injunctive relief is appropriate respecting the class as a whole.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, __, 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." (Internal quotation marks omitted)).

Frank contends that the settlement class may not be certified under Rule 23(b)(2) because "monetary claims predominate."  Frank Obj. at 13. He points out that the class comprises persons who purchased Subway sandwiches but who allegedly did not get what

22

they paid for. He contends that the usual remedy for this kind of harm is money—i.e., a refund or the difference in value between the sandwich as represented and the sandwich received. That may be true, but in the present case the parties have excised any claim for monetary relief from the settlement and left all class members free to pursue such claims if they choose to do so, either individually or through a subsequent class action. Thus, all that is at stake in this case is injunctive relief. It is true, as Frank points out, that courts are suspicious of requests to certify a class under Rule 23(b)(2) when monetary relief is available. However, the reason for this is the possibility that the named plaintiff is trying to circumvent the procedural requirements of Rule 23(b)(3)—such as that individualized issues not predominate over the common questions of law or fact and that class members receive notice of the suit and an opportunity to opt out—by combining individualized claims for monetary relief with a request for a broader injunction. See Dukes, 131 S. Ct. at 2558–60. Where, as here, the class members are not releasing any claims for monetary relief in the first place, and the only relief awarded to the class is an injunction, the reasons for suspicion are absent. See Berry v. Schulman, 807 F.3d 600, 609–13 (4th Cir. 2015) (affirming certification of a settlement class under Rule 23(b)(2) even though "individualized monetary damages claims" were "at issue" because those claims were retained by class members under the terms of the settlement).

Frank also contends that injunctive relief is unavailable under many of the state consumer-protection statutes at issue in this case, and that the named plaintiffs cannot satisfy the general requirements for obtaining injunctive relief, such as proving that they would suffer irreparable harm in the absence of an injunction. Again, Frank may be correct, but that is irrelevant where, as here, the defendant has agreed as part of the

settlement to the entry of injunctive relief. The Fourth Circuit recently made this very point when it approved a Rule 23(b)(2) settlement class in a case under the Fair Credit Reporting Act ("FCRA"). Berry, 807 F.3d at 610–11. In that case, the objectors argued that certification under Rule 23(b)(2) was improper because the FCRA does not permit consumers to seek injunctive relief. However, the court deemed the unavailability of injunctive relief under the FCRA "beside the point." Id. at 610. It noted that, in the settlement context, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all, and that the defendant was "free to agree to a settlement enforcing a contractual obligation that could not be imposed without its consent." Id. Likewise, because Doctor's Associates has consented to the entry of injunctive relief in the present case, this class may be certified under Rule 23(b)(2) even though the class might have been unable to obtain injunctive relief in a contested suit.[8]

The remaining question is whether class counsel's fee request is reasonable. When a class is certified under Rule 23(b)(2), the reasonableness of counsel's fee is usually determined by the "lodestar method." See People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996). Under this method, a district court begins by computing a "lodestar": the hours reasonably expended on the case multiplied by a reasonable hourly rate. See, e.g., Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014). Although the lodestar yields a presumptively reasonable fee, the court may adjust the fee up or down based on factors not included in the computation. Id.

---

[8]Notably, the defendant's consenting to the entry of injunctive relief does not circumvent any of the safeguards in Rule 23 that are meant to protect absent class members. See Amchem Prods., 521 U.S. at 620 (holding that, even in the settlement context, courts must enforce aspects of Rule 23 that are "designed to protect absentees").

24

Before proceeding, I note that the lodestar method is of little utility in a case like this, where class counsel and the defendant have agreed that a certain fee is reasonable, and where any amount not awarded to class counsel cannot be distributed to the class members. Indeed, the objectors do not contend that class counsel's requested fee exceeds what is reasonable as measured by the lodestar method. Instead, they contend that class counsel has unreasonably appropriated the entire cash value of the settlement for themselves. However, as I have already explained, it is not practical, given the reasonable settlement value of this case, to distribute cash to the class members. Thus, the reasonableness of counsel's fee cannot be measured by the size of the fee in relation to the amount of money that the class members will receive. Instead, it should be measured by the value of the injunctive relief in relation to what the class members have given up in exchange for that relief. And measured this way, I conclude that the fee is reasonable. Class counsel obtained an injunction requiring Doctor's Associates to take steps designed to ensure that all sandwiches sold in Subway restaurants are either 6 or 12 inches long, and to disclose to customers that variation in the bread-baking process sometimes results in bread that is slightly shorter than the advertised length. This injunction will end the allegedly deceptive marketing and sales practices challenged in this case. Moreover, in obtaining the injunction, class counsel preserved each class member's right to bring a subsequent action for monetary damages, either individually or as part of a class action. The only right the class members have given up is the right to pursue additional injunctive relief, yet the objectors have not identified (and I cannot envision) any additional injunctive relief that a rational class member might want to pursue. When this result is compared to the strength of the plaintiff's claims, it can only be described as

25

excellent. Therefore, a fee of $520,000, which is modest by class-action standards, is reasonable.

For the sake of completeness, I also find that the proposed fee is reasonable under the lodestar method. The total fee will be distributed to eleven law firms. A lawyer from each firm has submitted a declaration describing the firm's hourly rates, the number of hours each professional at the firm spent on the case, and the costs and expenses the firm incurred. See ECF Nos. 50-2 to 50-11. Multiplying the reasonable hourly rate of each professional by the reasonable number of hours spent on the case results in a total lodestar of more than $1.125 million.[9] Thus, an award of $520,000 in fees ($40,000 of which is reimbursement for expenses) is a fee that is less than 50% of the lodestar. I do not see any reason to make further reductions to the lodestar amount. Accordingly, when measured by the lodestar method, class counsel's fee request is reasonable.

Frank contends that even if class counsel's fee is reasonable in the aggregate, there is a separate problem, which is that the plaintiffs' attorneys have proposed to divide the aggregate fee award among themselves and have not sought court approval of their proposed allocation. However, in response to Frank's objection, class counsel disclosed to the court their proposed allocation and asked me to approve it. See ECF No. 54 at 39. No plaintiffs' attorney has objected to the proposed allocation. At the fairness hearing, Frank did not contend that class counsel's proposed allocation was improper, and I conclude that it is fair. Thus, perhaps this part of Frank's objection is moot.

_____

[9]This figure represents work performed through May 2014 and does not include the time counsel spent finalizing the settlement agreement, preparing and filing motions for approval of the settlement and the fee award, and responding to class members' inquiries and objections.

However, I also note that the authority on which Frank relies to support the proposition that class counsel may not privately divide a fee is inapposite. His primary case is In re High Sulfur Content Gasoline Products Liability Litigation, 517 F.3d 220 (5th Cir. 2008). But in that case, the court did not hold that district courts cannot allow plaintiffs' lawyers to divide a fee that is reasonable in the aggregate among themselves. Rather, the court held that when some of the plaintiffs' attorneys object to a proposed allocation—as they had in High Sulfur—the court has a duty to rule on the objection and allocate fees in a fair manner. Id. at 233–34 (stating that a district court has a duty to scrutinize the allocation of a fee award "when an attorney objects to his co-counsel's fee award recommendations"). The court acknowledged circuit precedent allowing a district court to award an aggregate sum to plaintiffs' attorneys and then leave apportionment up to the attorneys themselves, and it did not disapprove of this precedent. Id. (discussing Longden v. Sunderman, 979 F.2d 1095, 1101 (5th Cir. 1992)).

Frank also cites In re Agent Orange Product Liability Litigation in support of his argument that a court may not allow plaintiffs' counsel to allocate fees among themselves. 818 F.2d 216 (2d Cir. 1987). But again, that case does not hold that district courts cannot allow counsel to privately divide a fee that is reasonable in the aggregate. Rather, the problem in Agent Orange was that plaintiffs' counsel had entered into a fee agreement in which fees would be allocated to certain firms based on how much the firm had advanced towards the expenses incurred during the litigation, rather than on the basis of the services the firm had performed for the class. Id. at 217. The court found that this arrangement created a potential conflict of interest between class members and their counsel because the investors had an incentive to settle early, regardless of the benefit to the class. Id. at

27

223–24. In the present case, the plaintiffs' proposed allocation is not based on each firm's contribution towards expenses but is based on the firms' actual services. Under the proposed allocation, the two law firms that performed the majority of the work in this case will each receive 35% of the total fee, while the remaining eight firms will split the remainder. See ECF No. 54 at 39. Thus, the proposed allocation does not create a conflict of interest between class members and their attorneys.

### III. CONCLUSION

For the reasons stated, I conclude that the settlement is fair and that the named plaintiffs and class counsel have adequately represented the class. I also conclude that the named plaintiffs' request for $5,000 in incentive awards is reasonable and that class counsel's request for $520,000 in costs, expenses, and attorneys' fees is reasonable.

Accordingly, **IT IS ORDERED** that the plaintiffs' motion for final approval of the settlement (ECF No. 54) is **GRANTED**. The court will enter the parties' proposed final judgment.

**IT IS FURTHER ORDERED** that class counsel's petition for service awards, attorneys' fees, and costs (ECF No. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Doctor's Associates' motions to seal certain parts of the record relating to the Declaration of John Gordon (ECF Nos. 56 & 62) are **GRANTED**.

**IT IS FURTHER ORDERED** that Frank's motion to exclude the Declaration of John Gordon (ECF No. 60) is **DENIED**.

**FINALLY, IT IS ORDERED** that the plaintiffs' motion to supplement their brief (ECF

28

No. 57) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 25th day of February, 2016.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge

Case 2:13-cv-00653-LA   Filed 02/25/16   Page 29 of 29   Document 84